**Thomas E. Higgins**
LAW OFFICES OF THOMAS E. HIGGINS
325 West Franklin Street
Tucson, Arizona 85701
(520) 624-8663
State Bar No: 04324

Attorney for Dennis Raymond McPherron

# IN THE UNITED STATES DISTRICT COURT
## IN THE DISTRICT OF ARIZONA

| | |
|---|---|
| **THE UNITED STATES OF AMERICA,** | Case No: CR17-00242-JAS-(EJM) |
|     Plaintiff, | |
| vs. | **EVIDENTIARY HEARING MEMORANDUM** |
| **DENNIS RAYMOND MCPHERRON,** | |
|     Defendant. | HON. JAMES A. SOTO |

COMES NOW, the Defendant, Dennis McPherron, by and through undersigned counsel, submits the forgoing Pretrial Memorandum of Points and Authorities.

RESPECTFULLY SUBMITTED, this August 8, 2019.

*Law Office of THOMAS HIGGINS, P.L.L.C.*


By: /s/Thomas E. Higgins
    THOMAS E. HIGGINS
    Attorney for Dennis R. McPherron

## I.   FACTS:

On February 17, 2016, Dennis McPherron, the Defendant was stopped at the Mariposa Port of Entry in Nogales, Arizona. He had in his possession several bird feathers, including Golden and Bald Eagle feathers. The Defendant failed to declare the feathers on the United States Fish and Wildlife Service Form 3-177 — Declaration for the Importation or Exportation of Fish or Wildlife.

*The Golden and Bald Eagle Protection Act,* prohibits the "taking" of "parts, nests, or eggs…" of the protected birds without a permit. 16 U.S.C. § 668. Under the Act, persons who *"take, possess, sell, purchase, barter, offer to sell, purchase or barter, transport, export or import, at any time or any manner, any bald eagle ... [or any golden eagle], alive or dead, or any part, nest, or egg thereof"* may be subjected to criminal penalties.[1] Mr. McPherron acquired the feathers in question, in the United States, prior to his trip to Mexico. However, before leaving the United States, Mr. McPherron failed to complete a USFWS Form 3-177 to notify Customs that he was leaving the country with the feathers. He was indicted on February 15, 2017, for violating 18 USC § 545.

Mr. McPherron is 73 years-old. Though he lacks Native American blood, he identifies as such, and has been accepted as a member of Haudenosaunee/Tuscarora tribe. Mr. McPherron is a Shaman for the Native American Church, and uses the feathers as part of customary and religious ceremonies. He has been practicing as a Shaman and Healer for several years. As part of his work and religious practice, Mr. McPherron travels across the United States visiting various Native Tribes to perform and participate in various traditional ceremonies.

## II. LAW/ ARGUMENT:

### A.  18 U.S.C. § 545 – 'SMUGGLING GOODS INTO THE UNITED STATES' IS A SPECIFIC INTENT CRIME:

The Defendant is charged with smuggling goods into the United States in violation of 18 U.S.C. § 545. However, as discussed above, Mr. McPherron acquired the feathers long before he left the United States. He failed to declare the feathers on the United States USFWS Form

---

[1] In June 2007, the bald eagles were removed from the Endangered Species List. As of 2009, the Act has made it possible for one to obtain a permit to move from operating utilities and airports. See, *U.S. Fish and Wildlife Service*, "Bald & Golden Eagle Information" https://www.fws.gov/birds/management/managed-species/bald-and-golden-eagle-information.php (accessed 2/23/2019). See also, United States v. Antoine, 318 F.3d 919, 921 (9th Cir. 2003).

3-177 — "Declaration for the Importation or Exportation of Fish or Wildlife" before he travelled outside the country. Likewise, upon returning to the United States, Mr. McPherron did not fill out a form.

Despite not having filled out the required forms prior to exiting/entering the country, Mr. McPherron lacked the requisite intent to violate either paragraph of 18 U.S.C. § 545. The relevant portions of that statute state:

> Whoever <u>knowingly and willfully, with intent to defraud</u> the United States, smuggles, or clandestinely introduces or attempts to smuggle or clandestinely introduce into the United States any merchandise which should have been invoiced

> Whoever <u>fraudulently or knowingly</u> imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law—

> Proof of defendant's possession of such goods, unless explained to the satisfaction of the jury, shall be deemed evidence sufficient to authorize conviction for violation of this section.

### B.  STATUTORY LANGUAGE/CONSTRUCTION SUPERSEDE IN CONTROVERSIES CONCERNING REQUISITE MENTAL STATE.

Our Courts repeatedly revert to statutory construction to resolve disputes over the mental state required for conviction under a particular statute. "*[t]he definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute.*" <u>Liparota v. United States</u>, 471 U. S. 419 (1985); citing <u>United States v. Hudson</u>, 7 Cranch 32 (1812). In determining the mental state under federal crime requires "*construction of the statute and . . . inference of the intent of Congress.*" <u>United States v. Balint</u>, 258 U. S. 250, 253 (1922). The courts have devised words "working formulae" to instruct juries regarding the meaning of various "*terms as 'felonious intent,' 'criminal intent,' 'malice aforethought,' 'guilty knowledge,' 'fraudulent intent,' 'willfulness,' 'scienter,' to denote guilty knowledge, or mens rea, to signify an evil purpose or mental culpability.*" <u>Morissette v. United States</u>, 342 U. S. 246, 252 (1952). "*By use or combination of these various tokens, they have sought to protect those who were not blameworthy in mind from conviction of infamous common-law crimes.*" <u>Id</u>. (emphasis added). Therefore, an analysis necessary begins with the "*statutory terms in accordance with their ordinary*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*meaning, unless the statute clearly expresses an intention to the contrary."* <u>I.R. ex rel. E.N. v. L.A. Unified Sch. Dist.</u>, 805 F.3d 1164, 1167 (9th Cir. 2015).

    1)  <u>THE COURTS GENERALLY DISFAVOR STATUTES THAT LACK A MENS REA REQUIREMENT:</u>

    The United States Supreme Court stated that *"offenses that require no mens rea generally are disfavored[.]"* <u>Staples v. United States</u>, 511 U.S. 600, 606, 114 S.Ct. 1793, 1797, 128 L.Ed.2d 608 (1994). *"[t]he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence."* <u>Id</u>. at 605, 114 S.Ct. at 1797 (citation omitted). Accordingly, *"some indication of congressional intent, express or implied, is required to dispense with mens rea as an element of a crime."* <u>Id</u>. at 606, 114 S.Ct. at 1797. Moreover, *"silence on this point by itself does not necessarily suggest that Congress intended to dispense with a conventional mens rea element, which would require that the defendant know the facts that make his conduct illegal."* <u>Id</u>. at 605, 114 S.Ct. at 1797 (citation omitted).

    2)  <u>JUDICIAL INTERPRETATION ERRS ON THE SIDE OF CONSTRUING A REQUIRED MENTAL STATE.</u>

    The Supreme Court generally avoids construing criminal statutes as imposing strict liability. <u>Staples</u>, at 607 n. 3, 114 S.Ct. at 1798 n. 3 (citing <u>United States v. Int'l Minerals & Chem. Corp</u>., 402 U.S. 558, 563-64, 91 S.Ct. 1697, 1700-01, 29 L.Ed.2d 178 (1971)). *"Whether criminal intent or guilty knowledge is an essential element of a statutory offense is to be determined by the language of the act in connection with its manifest purpose and design."* Planned Parenthood, Sioux Falls Clinic v. Miller, 63 F.3d 1452, 1464 (8th Cir.1995); citing <u>South Dakota v. Nagel, 279 N.W.2d 911, 915 (S.D.1979)</u>.

    The courts take into consideration several factors in determining legislative intent before they are willing to impose liability without fault. Including: (1) the legislative history; (2) guidance from other statutes; (3) the severity of the punishment provided for the crime; (4) the seriousness of harm to the public which may follow from the prohibited conduct; (5) "the accused's opportunity to ascertain the true facts (whether legislation really meant to impose liability on one who was without fault because he lacked knowledge of these facts" (6) the difficulty prosecuting officials would have in proving a mental state for this type of crime; and (7) number of prosecutions to be expected. *Wayne R. LaFave*, 1 <u>Substantive Criminal Law Strict Liability</u> § 5.5 (2d ed.); cited in <u>State v. Jones</u>, 2011 S.D. 60, ¶ 12 n. 1, 804 N.W.2d 409, 413 n. 4. (2011).

The Ninth Circuit in emphasized the Court's ruling in <u>Morissette,</u> stated *"the courts should be most reluctant when interpreting statutes to dispense with a mens rea requirement absent a clear legislative intention to do so."* <u>United States v. Launder</u>, 743 F.2d 686, 689 (9th Cir.1984). Citing <u>Morissette</u> *("The spirit of the doctrine which denies to the federal judiciary power to create crimes forthrightly admonishes that we should not enlarge the reach of enacted crimes by constituting them from anything less than the incriminating components contemplated by the words used in the statute.")* 263, 72 S.Ct. at 249, supra (footnote omitted).

This year the Ninth Circuit ruled held *"[i]n determining what mental state is required to prove a violation of the statute, we look to its words and the intent of Congress."* <u>US. v. Price</u>, No. 15-50556, (9th Cir. 2019); Citing <u>United States v. Johal</u>, 428 F.3d 823, 826 (9th Cir. 2005); and <u>Staples v. United States</u>, 511 U.S. 600, 605 (1994) (*"We keep in mind the "background rules of the common law in which the requirement of some mens rea for a crime is firmly embedded.")*.

## C.  THE MENTAL STATE REQUIRED UNDER § 545 IS CLEAR, AND THE DEFENDANT LACKED THE REQUISITE MENTAL STATE.

The first paragraph of § 545 requires the defendant to import/export prohibited items *"knowingly and willfully, with intent to defraud."* While the second requires the defendant to do so *"fraudulently or knowingly."* The Supreme Court has interpreted statutes with far less lexical indicia of mental state, as requiring specific intent.

In <u>Liparota v. United States</u>, the Court found a specific intent requirement in the language of food stamp fraud statute, which stated, *"whoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by [the statute] or the regulations."* 471 U.S. 419, 420, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985). The Court rejected the government's argument that the statute contained no mens rea requirement, and held that it requires a showing that the defendant knew his conduct to be unauthorized by statute or regulations. <u>Id</u>. at 425, 105 S.Ct. 2084.

Equally, the Supreme Court examined the use of the term "knowingly" in the Protection of Children Against Sexual Exploitation Act of 1977. See generally, <u>United States v. X-Citement Video</u>, Inc., 513 U.S. 64 (1994). The Court's decision hinged on the "the critical determination" was whether the term "knowingly," in the phrases *"knowingly transports or ships" and "knowingly receives, or distributes"* modifies not only those verbs but also the

phrase "the use of a minor." Id. at 69-70 The Court held that *"[t]he most natural grammatical reading . . . suggests that the term `knowingly' modifies only the surrounding verbs: transports, ships, receives, distributes, or reproduces."* Id. at 81. The Stated, *"the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct."* Id. at 72.

In a case specifically dealing with 18 U.S.C. § 545, Third Circuit stated, *"the meaning of `defraud' must be interpreted in the context of the particular statute that uses the term. . . .* United States v. Menon, 24 F.3d 550 (3d Cir.1994). Id. at 556. The Court held that *"because the meaning of defraud is ambiguous in the context of § 545, that section requires an intent to cause a deprivation of property or money."* Id. at 558, citing McNally v. United States, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). Similarly, the Ninth Circuit has held that inclusion of the term "willfully," in a statute prohibiting the export of ammunition, made it clear that Congress intended to punish only those who exported ammunition knowing that it was unlawful to do so. United States v. Lizarraga-Lizarraga, 541 F.2d 826, 828 (9th Cir. 1976). See also United States v. Bishop, 412 U.S. 346, 360, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941 (1973) (holding that *"The word `willfully' in these statutes generally connotes a voluntary, intentional violation of a known legal duty. It has formulated the requirement of willfulness as `bad faith or evil intent,' or `evil motive…'*).[2]

When a statute requires *"willful"* action, the Courts have held that, mere negligence or even gross negligence, do not satisfy the mens rea requirement. United States v. Colacurcio, 514 F.2d 1, 8 (9th Cir.1975); United States v. Klee, 494 F.2d 394, 395 and n. 1 (9th Cir.), cert. denied, 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 61 (1974). Rather, the government must show the defendant's act was *"voluntary and purposeful, and if committed with the specific intent…"* United States v. Swanson, 509 F.2d 1205, 1210 (8th Cir.1975).

*"When interpreting federal criminal statutes that are silent on the required mental state, we read into the statute only that mens rea which is necessary to separate wrongful conduct from otherwise innocent conduct."* Elonis v. United States, 135 S. Ct. 2001, 2010 (2015). **Reasonably, when a statute such § 545 enumerates the required mental state, the court will not uphold a conviction in the absence of proof of that mental state.**

---

[2] See also McCarthy v. United States, 394 U.S. 459, 471, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); Sansone v. United States, 380 U.S. 343, 353, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); James v. United States, 366 U.S. 213, 221, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961); United States v. Murdock, 290 U.S. 389, 394-98, 54 S.Ct. 223, 78 L.Ed. 381 (1933).

1

2

3
    1) <u>WHILE § 545 CONTAINS A STATUTORY PRESUMPTION PERMITTING CONVICTION BASED ON POSSESSION, THE GOVERNMENT MUST STILL PROVE MENS REA.</u>

4

5

6

7

8

9

10

11

12

13
In <u>Matalon</u>, the defendant challenged the constitutionality of the statutory presumption in 18 U.S.C. § 545. <u>United States v. Matalon</u>, 425 F.2d 70 (2d Cir.1970). The Court held the jury instruction and statutory presumption in were not unconstitutional, stating *"a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience."* <u>Id.</u> at 71, Citing <u>Tot v. United States</u>, 319 U.S. 463, 467-468, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943). See also, <u>United States v. Bentley</u>, 875 F.2d 1114, 1118 (5th Cir. 1989) (*"an inference of guilt as to all elements of the offenses charged beyond a reasonable doubt, independently of the statutory presumption allowing conviction for smuggling upon proof of mere possession"*). However, *"where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them it is not competent for the legislature to create it as a rule governing the procedure of courts."* <u>Id</u>.

14

15

16

17

18
The Supreme Court ruled in <u>Turner</u>, in criminal cases statutes permitting the inference of one fact from the proof of another, must be subjected to scrutiny by the courts to prevent *"conviction upon insufficient proof."* <u>Turner v United States</u>, 396 US 398, 405; 90 S Ct 642, 649 (1970), citing <u>Leary v. United States</u>, 395 U. S. 6, 37 (1969). Referring to the statute in this case, the Supreme Court explicitly reiterated the mens rea requirement stating:

19

20

21

22
> "For the Government to secure a conviction under § 545, it must prove the physical act of unlawful importation as well as a knowing and willful intent to defraud the United States. An acquittal on the criminal charge may have involved a finding that the physical act was not done with the requisite intent." <u>One Lot Emerald Cut Stones and One Ring v. United States</u>, 409 U.S. 232, 234, 93 S.Ct. 489, 491, 34 L.Ed.2d 438, 440 (1972) (emphasis added).

23

24

25

26

27

28
Thus, here, the government must prove that Mr. McPherron failed to fill out a USFWS Form 3-177 when exiting/entering the United States *"knowingly and willfully, with intent to defraud."* However, Mr. McPherron lacked the requisite mental state to be found guilty under the statute. He took his own feathers, which he had acquired long ago (in the United States), and travelled with them outside the country. He then returned to the United States with those same feathers. Mr. McPherron travelled with the feathers as part of his religious healing activities. Mr. McPherron is a Shaman for the Native American Church, and uses the feathers

as part of customary and religious ceremonies. He was merely practicing his protected religious activities, and had no intent to defraud the United States.

Mr. McPherron was not charged with violating the Bald and Golden Eagle Protection Act, 16 U.S.C. § 668. He was charged with smuggling prohibited items under 18 U.S.C. § 545. As discussed, he did not possess the necessary mens rea warranting a conviction under that statute.

## D.  CONCLUSION

Because Mr. McPherron did not knowing and willfully travel with the feathers with intent to defraud the United States, his conviction under 18 U.S.C. §545 would be improper. The Government has not introduced any evidence that the Defendant acted with the specific intent and bad faith required under the law. Therefore, the Defendant respectfully requests that the court dismiss the charges against him.

**RESPECTFULLY SUBMITTED** this 8th day of August 2019.

***Law Offices of Thomas Higgins, PLLC***

By:/s/Thomas E. Higgins
    Thomas Higgins, Esq.
    Attorney for Dennis Raymond McPherron

*The above signed does hereby certify that on the above date he electronically transmitted this document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:*

MICHAEL P. JETTE
Assistant United States Attorney