**Thomas E. Higgins**
LAW OFFICES OF THOMAS E. HIGGINS
325 West Franklin Street
Tucson, Arizona 85701
(520) 624-8663
State Bar No: 04324

Attorney for Dennis Raymond McPherron

# IN THE UNITED STATES DISTRICT COURT
# IN THE DISTRICT OF ARIZONA

| | |
|---|---|
| **THE UNITED STATES OF AMERICA,**<br>    Plaintiff,<br>vs.<br>**DENNIS RAYMOND MCPHERRON,**<br>    Defendant. | Case No: CR-17-00242-JAS-(EJM)<br>**POST-TRIAL MEMORANDUM**<br>HON. JAMES A. SOTO |

   COMES NOW, the Defendant, Dennis McPherron, by and through undersigned counsel, submits the forgoing *Post-Trial Memorandum* as order by the Court.

   RESPECTFULLY SUBMITTED, this February 12, 2020.

                    ***Law Office of THOMAS E. HIGGINS, P.L.L.C.***


                    By:  ___/s/Thomas E. Higgins___
                         THOMAS E. HIGGINS
                         Attorney for Dennis R. McPherron

# MEMORANDUM

## I.     Introduction and Overall Argument:

Basically, Mr. McPherron cannot be found guilty after the bench trial on two major grounds. First, the indictment only charges Mr. McPherron with smuggling one bald eagle feather, and, two, the government did not, nor cannot, provide or prove the necessary mens rea for smuggling.

As to the government's case, Mr. McPherron did not chose to be prosecuted for smuggling rather than a violation of the Endangered Species Act.  The government, for some reason, did not present evidence of any lab reports or other evidence such as expert testimony that the feather charged in the indictment, a single bald eagle feather, was in fact, a bald eagle feather. No lab report was introduced in evidence nor any foundation laid.  The only testimony Regarding the bald eagle feather alleged in the indictment was testimony of Mr. McPherron that There were <u>no</u> bald eagle feathers seized.  The allegation of a bald eagle feather being "smuggled" needs to be proven beyond a reasonable doubt.

As to the second point, Mr. McPherron testified extensively that he used the seized feathers for services as a native American healer and had them in his possession for up to 40 years.  He further testified that he had crossed the Mexico/US borders somewhere in the neighborhood of 30 to 50 times over the years and had never declared them.  He further testified that on numerous occasions he was asked about the feathers by United States Customs officials and then sent on his way without any problems.

## II.     STATEMENT OF RELEVANT FACTS:

Mr. McPherron is 74 years-old. Though he lacks native blood, he identifies as, and has been accepted as a Native American. In addition to being a practicing member of the Native

American Church, Mr. McPherron has served as a Shaman and healer for over four (4) decades. As is customary, he uses various bird feathers as part religious ceremonies.

On February 17, 2016, Dennis McPherron, was stopped at the Mariposa Port of Entry in Nogales, Arizona. He had in his possession 45 different bird feathers, belonging to a variety of different species of birds. Upon departing the United States, Mr. McPherron failed to complete a USFWS Form 3-177 — "Declaration for the Importation or Exportation of Fish or Wildlife," to notify Customs authorities that he was leaving the country with the feathers. Likewise, upon reentry, McPherron failed to declare the feathers on the Form 3-177.

When searched at the port of entry, customs agents discovered two (2) Golden Eagle feathers. Accordingly, Mr. McPherron was charged with smuggling goods into the United States Bald Eagle feathers, prohibited under the *Bald and Golden Eagle Protection Act,* 16 U.S.C. § 668, in violation of 18 U.S.C. § 545.

### A.  THE FEATHERS:

While the indictment charges Mr. McPherron with illegally importing a single Bald Eagle feather into the United States, the government failed to produce any evidence at trial to establish that the feather was actually, a Bald Eagle feather. Contrary to the charged count, Mr. McPherron testified that the feather in question was from a Golden Eagle (not charged in the indictment).

From the inception of this case, Mr. McPherron maintained that he did not import illegal feathers acquired in Mexico. Rather, Mr. McPherron insists that the feathers were acquired in the United States, years before his trip to Mexico, he merely took the feathers with him on his trip to Mexico (which he has done countless times before).

While McPherron had in his possession over 45 different feathers, this case revolves around two Golden Eagle feather, which the government misidentified as Bald Eagle feathers. Golden Eagle tail feathers are passed down through generations within the Native American Church. The two (2) feathers were blessed over forty (40) years ago by William Smith, the then head of the medicine people of the Cherokee Nation. Mr. McPherron received one Golden Eagle feather in the late 1980's from James Blackburn, in a 25-30 person ceremony of the Northern Arapaho, Indian, in Nevada. He received the second Golden Eagle feather by a registered Native American from the Southern Cheyenne Tribe named Wayne Turtle (deceased). The ceremony occurred approximately in 1990, in Woodfords, California. The Ceremony was

confirmed by Sharon Vann, Mr. Turtle's niece, also a practicing member of the Native American Church. At the time, Mr. Turtle was a roadman, a prestigious position in the churc

### B. THE BALD EAGLE AND GOLD EAGLE PROTECTION ACT

*The Golden and Bald Eagle Protection Act* ("BGEPA"), prohibits the "taking" of "parts, nests, or eggs…" of the protected birds without a permit. 16 U.S.C. § 668. Under the Act, persons who *"take, possess, sell, purchase, barter, offer to sell, purchase or barter, transport, export or import, at any time or any manner, any bald eagle … [or any golden eagle], alive or dead, or any part, nest, or egg thereof"* may be subjected to criminal penalties.[1]

The BGEPA prohibits the possession of both Bald and Golden eagle feathers. 16 U.S.C. § 668. One exception to this prohibition allows federally recognized Native American tribes to use eagle feathers for a bona fide religious purpose so long as a permit is obtained. 16 U.S.C. § 668(a). To clarify, only enrolled members of federally recognized tribes, with which the United States maintains a government-to-government relationship, may apply for permits. 50 C.F.R. § 22.22(a) (2012).

The BGEPAs' exception contains no allowance for use by persons who are not Native American. This exemption has been upheld under the Establishment Clause of the First Amendment, because the exemption for Native Americans is rationally related to the legitimate government interests.[2] Rupert v. Director, *U.S. Fish and Wildlife Service*, 957 F.2d 32, 34 (1st Cir. 1991). In this case however, Mr. McPherron is not charged with a violation of The Bald Eagle and Golden Eagle Protection Act, he is charged with "smuggling" a single Bald Eagle feather.

### III. LAW/ ARGUMENT:

#### A. 18 U.S.C. § 545 – "SMUGGLING GOODS INTO THE UNITED STATES" IS A SPECIFIC INTENT CRIME REQUIRING THE GOVERNMENT TO PROVE THE REQUISITE MENS REA:

1) SPECIFIC INTENT CRIMES:

*Specific Intent crimes* differ from *General Intent crimes*, in that, beyond proving that the defendant committed *"actus reus,"* the government must also prove that the defendant

---

[1] In June 2007, the bald eagles were removed from the Endangered Species List. As of 2009, the Act has made it possible for one to obtain a permit to move from operating utilities and airports. See, *U.S. Fish and Wildlife Service*, "Bald & Golden Eagle Information" https://www.fws.gov/birds/management/managed-species/bald-and-golden-eagle-information.php (accessed 2/23/2019). See also, United States v. Antoine, 318 F.3d 919, 921 (9th Cir. 2003).

[2] To protect the Native American religion and culture, and to protect the eagle population.

performed the act with the requisite *"mens rea,"* or culpable state of mind. Cheek v. United States, 498 US 192,194, 111 S. Ct. 604, 606, 112 L. Ed. 2d 617, 619 (1991). These crimes are often characterized as requiring two states of mind; 1) the intent to cause the actus reus, and 2) the *specific intent* to cause some further objective or goal. See United States v. Christy, 916 F.3d 814, 845 (10th Cir. 2019); citing Torres v. Lynch, 136 S.Ct. 1619, 1630-31, 194 L.Ed.2d 737 (2016); Morissette v. United States, 342 U.S. 246, 250-63, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

At common-law the term *"specific intent"* traditionally referred to *"certain narrow classes of crimes"* warranting *"heightened culpability…""* United States v. Bailey, 444 US 394, 405 (1980). The United State Supreme Court interpreted the requirement by stating, *"[o]ne who does act with such specific intent is aware that what he does is precisely that which the statute forbids."* Screws v. United States, 325 US 91, 104 (1945). See also U.S. v. Blair, 54 F.3d 639 (10th Cir. 1995) ("Specific intent crimes require the government to prove that the defendant intentionally committed an act and intend to cause a particular result by committing that act.")

    2)  <u>THE DEFENDANT WAS CHARGED UNDER THE FIRST SECTION OF 18 U.S.C. § 545 :</u>

Mr. McPherron is charged with smuggling goods into the United States in violation of 18 U.S.C. § 545. However, as discussed above, Mr. McPherron acquired the feathers long before he travelled with them on his trip to Mexico. Admittedly, during his departure and reentry, Mr. McPherron failed to complete the USFWS Form 3-177 declaring the feathers. However, the government has not established the requisite mens rea under the statute. The relevant sections of 18 U.S. Code § 545 read:

> "Whoever <u>knowingly</u> and <u>willfully</u>, <u>with intent to defraud</u> the United States, smuggles, or clandestinely introduces or attempts to smuggle or clandestinely introduce into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper; or
>
> Whoever <u>fraudulently</u> or <u>knowingly</u> imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law—

***

> Proof of defendant's possession of such goods, unless explained to the satisfaction of the jury, shall be deemed evidence sufficient to authorize conviction for violation of this section. 18 U.S.C. § 545

An important distinction exists between the two sections of the statute. The 9th circuit highlighted this distinction in United States v. Davis, 597 F. 2d 1237, 1239 (9th Cir. 1979). *"We have recognized that the two paragraphs of [section] 545 set forth two separate offenses."* Id. citing, Olais-Castro v. United States, 416 F.2d 1155, 1157-1158 (9th Cir. 1969). For an offense charged under paragraph one of section 545, specific intent must be proven by the government. United States v. Smith, 714 Fed. Appx. 701 (9th Cir. 2017) (*"'Fraudulently' importing unlawful merchandise – doing so with the intent to defraud – requires specific intent[.]"*)

By contrast, for an offense charged under paragraph two, the government is not required to prove as an element of an offense that the defendant *"specifically intended to defraud the Government."* Davis, 597 F.2d at 1239. In upholding the district court's refusal to grant the defendant's request for a specific jury instruction, the Court stated, *"By its own clear terms, § 545 [second paragraph] does not require proof of both a knowing and fraudulent element."* Id. Here, Mr. McPherron is charged under the first section of the statute. Count 1 of the indictment states:

> "McPherron, did **willfully, knowingly and fraudulently** import and bring into the United States certain merchandise, that is, various bald eagle feathers contrary to law that is, the Bald and Golden Eagle Protection Act under Title 16 United States Code Section 668, knowing the same to have been imported and brought into the United States contrary to law. All in violation of Title 18, United States Code, Section 545."

> Compare with the first paragraph of Section 545: "Whoever knowingly and willfully, with intent to defraud…"

It is clear from the language used in the indictment, that Count 1 charges McPherron with violation of the first paragraph of section 545. The Supreme Court has *"long recognized that determining the mental state required for commission of a federal crime requires construction of the statute and … inference of the intent of Congress."* United States v. Christy, 916 F.3d 814, 845 (10th Cir. 2019); citing, Staples v. United States, 511 U.S. 600, 605, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (quotations omitted).

In Menon the Third Circuit ruled that, *"the meaning of 'defraud' must be interpreted in the context of the particular statute that uses the term…"* United States v. Menon, 24 F.3d 550,

556 (3d Cir.1994). The Third Circuit identified as "countervailing evidence" the legislative history of the 1948 revision of the United States Code, specifically, the House Report, which explains that Congress did not intend any substantive changes unless explicitly discussed in the Reviser's Notes. Id. at 556-57. Because the Reviser's Note to § 545 states only that *"[c]hanges were made in phraseology"* and fails to discuss the impact of deleting the words *"the revenues of,"* the *Menon* court held that Congress did not intend to work a substantive change in the statute by interpreting *"to defraud the United States"* more broadly. Id.

In relying on the on the rule of lenity, the Court concluded by holding that, because the meaning of defraud is ambiguous in the context of § 545, that section requires an intent to cause a deprivation of property or money. Menon, 24 F.3d at 558, citing McNally v. United States, 483 U.S. 350, 359, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987) (The Court reasoned that this common understanding, combined with the rule of lenity meant that, the mail fraud statute required an intent to deprive someone of money or property.) Following that same analysis, the Court reversed the defendant's conviction pointing out that the government failed to make a showing that the defendant had such an intent to defraud the United States. US v. Menon, 24 F. 3d at 556. (emphasis added)

Similarly, here, the Government has not provided any evidence that Mr. McPherron, at all, intended to defraud the United States, or that he knew what he was doing was illegal. On the contrary, all the evidence points to the fact that Mr. McPherron's failure to fill out the required forms prior to exiting/entering the country, was carried out without the *specific intent* to defraud the United States.

In *Lizarraga*, the Ninth Circuit focused on the specific language in the indictment. There, the defendant was charged with *"willfully and unlawfully attempt[ing] to export and take out of the United States … and into the Republic of Mexico ammunition"* in violation of 22 U.S.C. § 1934. United States v. Lizarraga-Lizarraga, 541 F.2d 826 (9th Cir. 1976). The Court held inclusion of the term "willfully," made it clear that Congress intended to punish only those who exported ammunition knowing it was unlawful to do so. See Id. at 828.

Other courts have similarly interpreted *"intent to defraud"* element of section § 545 to mean an *"intent to avoid and defeat the United States Customs laws."* United States v. Boggus, 411 F.2d 110, 113 (9th Cir.1969). In *Etheridge*, the 5th Circuit construed a similar statute (22 U.S.C. § 1934) as requiring specific 22 U.S.C. § 1934. Etheridge v. United States, 380 F.2d 804 (5th Cir.1967). In affirming the defendant's convictions, the Court held that

there was sufficient evidence to support the jury's finding that *"each of the defendants knew it was unlawful to export from the United States to Haiti the aircraft ...."* Id. at 807. (emphasis added). Although the Court did not directly hold that, § 1934 imposes a specific intent limitation upon criminal liability, the language employed by the Court strongly implied that such a specific intent limitation is applicable. Id. The courts have generally recognized the word "*willfully*" in such statutes to connote a voluntary, intentional violation of a known legal duty, formulated as requiring willfulness or *"bad faith or evil intent..."* United States v. Bishop, 412 U.S. 346, 360, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941 (1973) (citations omitted).

### B. SECTION 545 REQUIRES THE GOVERNMENT TO PROVE THAT THE DEFENDANT KNEW THAT BY CROSSING THE BORDER WITH THE FEATHERS HE WAS VIOLATING THE LAW:

Knowledge is a precondition to forming intent. To successfully prosecute Mr. McPherron under section 545, the Government would have to prove that he knew he that he *"importing or bringing in merchandise contrary to law."* See United States v. Garcia-Paz, 282 F.3d 1212, 1217 (9th Cir. 2002). Title 19 defines "merchandise" as *"goods, wares, and chattels of every description, and includes merchandise the importation of which is prohibited...."* There the defendant was found guilty of smuggling marijuana from Mexico to the United States. *Id.* at 1213. The defendant argued there was no evidence introduced at trial that he knew he was importing marijuana. Id*.* at 1217. The Court indicated that evidence was not necessary to prove the defendant knew that what he was importing marijuana under 18 U.S.C. § 545, rather, the court emphasized that the statute's use of "knowingly" modifies *"imports or brings into the United States, any merchandise contrary to law"* and therefore, the defendant need only know that he is importing or bringing in *"merchandise contrary to law."* Id*.* The Court clarified that because the defendant knew he was bringing in merchandise contrary to law, him being mistaken about the kind of illegal merchandise was irrelevant. Id*.*

Here, there is no evidence that Mr. McPherron *knew* that travelling with feathers was illegal. Thus, he lacked the requisite knowledge that his actions were illegal.

### C. STATUTORY LANGUAGE & CONSTRUCTION SUPERSEDE IN CONTROVERSIES CONCERNING REQUISITE MENTAL STATE.

Our Courts repeatedly revert to statutory construction to resolve disputes over the mental state required for conviction under a particular statute. "*[t]he definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes,*

which are solely creatures of statute." Liparota v. United States, 471 U. S. 419 (1985); citing United States v. Hudson, 7 Cranch 32 (1812). In determining the mental state under federal crime requires *"construction of the statute and . . . inference of the intent of Congress."* United States v. Balint, 258 U. S. 250, 253 (1922). The courts have devised *"working formulae"* to instruct juries regarding the meaning of various *"terms as 'felonious intent,' 'criminal intent,' 'malice aforethought,' 'guilty knowledge,' 'fraudulent intent,' 'willfulness,' 'scienter,' to denote guilty knowledge, or mens rea, to signify an evil purpose or mental culpability."* Morissette v. United States, 342 U. S. 246, 252 (1952). Through these tokens, they protect those who are *"not blameworthy in mind from conviction of infamous common-law crimes."* Id. (emphasis added). Therefore, an analysis necessary begins with the *"statutory terms in accordance with their ordinary meaning, unless the statute clearly expresses an intention to the contrary."* I.R. ex rel. E.N. v. L.A. Unified Sch. Dist., 805 F.3d 1164, 1167 (9th Cir. 2015).

1) <u>THE COURTS GENERALLY DISFAVOR STATUTES THAT LACK A MENS REA REQUIREMENT:</u>

The United States Supreme Court stated that *"offenses that require no mens rea generally are disfavored [.]"* Staples v. United States, 511 U.S. 600, 606, 114 S.Ct. 1793, 1797, 128 L.Ed.2d 608 (1994). *"[t]he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence."* Id. at 605, 114 S.Ct. at 1797 (citation omitted). Accordingly, *"some indication of congressional intent, express or implied, is required to dispense with mens rea as an element of a crime."* Id. at 606, 114 S.Ct. at 1797. Moreover, *"silence on this point by itself does not necessarily suggest that Congress intended to dispense with a conventional mens rea element, which would require that the defendant know the facts that make his conduct illegal."* Id. at 605, 114 S.Ct. at 1797 (citation omitted).

2) <u>JUDICIAL INTERPRETATION ERRS ON THE SIDE OF CONSTRUING A REQUIRED MENTAL STATE.</u>

The Supreme Court generally avoids construing criminal statutes as imposing strict liability. Staples, at 607 n. 3, 114 S.Ct. at 1798 n. 3 (citing United States v. Int'l Minerals & Chem. Corp., 402 U.S. 558, 563-64, 91 S.Ct. 1697, 1700-01, 29 L.Ed.2d 178 (1971)). *"Whether criminal intent or guilty knowledge is an essential element of a statutory offense is to be determined by the language of the act in connection with its manifest purpose and*

*design."* Planned Parenthood, Sioux Falls Clinic v. Miller, 63 F.3d 1452, 1464 (8th Cir.1995); citing South Dakota v. Nagel, 279 N.W.2d 911, 915 (S.D.1979).

The courts take into consideration several factors in determining legislative intent before they are willing to impose liability without fault. Including: (1) the legislative history; (2) guidance from other statutes; (3) the severity of the punishment provided for the crime; (4) the seriousness of harm to the public which may follow from the prohibited conduct; (5) the accused's opportunity to ascertain facts (whether legislation really meant to impose liability without fault based on the lack of knowledge of these facts (6) the difficulty prosecuting officials would have in proving a mental state for this type of crime; and (7) number of prosecutions to be expected. *Wayne R. LaFave*, 1 Substantive Criminal Law Strict Liability § 5.5 (2d ed.); cited in State v. Jones, 2011 S.D. 60, ¶ 12 n. 1, 804 N.W.2d 409, 413 n. 4. (2011).

The Ninth Circuit in emphasized the Court's ruling in *Morissette,* it stated, *"the courts should be most reluctant when interpreting statutes to dispense with a mens rea requirement absent a clear legislative intention to do so."* United States v. Launder, 743 F.2d 686, 689 (9th Cir.1984). Citing Morissette *("The spirit of the doctrine which denies to the federal judiciary power to create crimes forthrightly admonishes that we should not enlarge the reach of enacted crimes by constituting them from anything less than the incriminating components contemplated by the words used in the statute.")* 263, 72 S.Ct. at 249, supra (footnote omitted).

In 2019, the Ninth Circuit ruled held *"[i]n determining what mental state is required to prove a violation of the statute, we look to its words and the intent of Congress."* US. v. Price, No. 15-50556, (9th Cir. 2019); Citing United States v. Johal, 428 F.3d 823, 826 (9th Cir. 2005); and Staples v. United States, 511 U.S. 600, 605 (1994) ("We keep in mind the background rules of the common law in which the requirement of some mens rea for a crime is firmly embedded."*).*

### D. THE MENTAL STATE REQUIRED UNDER THE FIRST PARAGRAPH OF § 545 IS CLEAR, AND McPHERRON LACKED THE REQUISITE MENTAL STATE.

The first paragraph of § 545 requires the defendant to import/export prohibited items *"knowingly and willfully, with intent to defraud."* While the second requires the defendant to do so *"fraudulently or knowingly."* The Supreme Court has interpreted statutes with far less lexical indicia of mental state, as requiring specific intent.

In Liparota v. United States, the Court found a specific intent requirement in the language of food stamp fraud statute, which stated, *"whoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by [the statute] or the regulations."* 471 U.S. 419, 420, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985). The Court rejected the government's argument that the statute contained no mens rea requirement, and held that it requires a showing that the defendant knew his conduct to be unauthorized by statute or regulations. Id. at 425, 105 S.Ct. 2084.

Equally, the Supreme Court examined the use of the term "knowingly" in the Protection of Children Against Sexual Exploitation Act of 1977. See generally, United States v. X-Citement Video, Inc., 513 U.S. 64 (1994). The Court's decision hinged on the "the critical determination" of whether the term "knowingly," in the phrases *"knowingly transports or ships" and "knowingly receives, or distributes"* modifies not only those verbs but also the phrase "the use of a minor." Id. at 69-70 The Court held that *"[t]he most natural grammatical reading . . . suggests that the term `knowingly' modifies only the surrounding verbs: transports, ships, receives, distributes, or reproduces."* Id. at 81. The Court Stated, *"the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct."* Id. at 72.

In a case specifically dealing with 18 U.S.C. § 545, Third Circuit stated, *"the meaning of `defraud' must be interpreted in the context of the particular statute that uses the term. . . .* United States v. Menon, 24 F.3d 550 (3d Cir.1994). Id. at 556. The Court reasoned that, *"because the meaning of defraud is ambiguous in the context of § 545, that section requires an intent to cause a deprivation of property or money."* Id. at 558, citing McNally v. United States, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). Similarly, the Ninth Circuit has held that inclusion of the term "willfully," in a statute prohibiting the export of ammunition, made it clear that Congress intended to punish only those who exported ammunition knowing that it was unlawful to do so. United States v. Lizarraga-Lizarraga, 541 F.2d 826, 828 (9th Cir. 1976). See also United States v. Bishop, 412 U.S. 346, 360, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941 (1973) (holding that *"The word `willfully' in these statutes generally connotes a voluntary, intentional violation of a known legal duty. It has formulated the requirement of willfulness as `bad faith or evil intent,' or `evil motive…"*).[3]

---

[3] See also McCarthy v. United States, 394 U.S. 459, 471, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); Sansone v. United States, 380 U.S. 343, 353, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); James v. United States, 366

When a statute requires *"willful" action*, the Courts have held that, mere negligence or even gross negligence, do not satisfy the mens rea requirement. United States v. Colacurcio, 514 F.2d 1, 8 (9th Cir.1975); United States v. Klee, 494 F.2d 394, 395 and n. 1 (9th Cir.), cert. denied, 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 61 (1974). Rather, the government must show the defendant's act was *"voluntary and purposeful, and if committed with the specific intent…"* United States v. Swanson, 509 F.2d 1205, 1210 (8th Cir.1975).

*"When interpreting federal criminal statutes that are silent on the required mental state, we read into the statute only that mens rea which is necessary to separate wrongful conduct from otherwise innocent conduct."* Elonis v. United States, 135 S. Ct. 2001, 2010 (2015). Reasonably, when a statute such § 545 enumerates the required mental state, the court will not uphold a conviction in the absence of proof of that mental state.

1) <u>THE STATUTORY PRESUMPTION APPLIES ONLY TO THE SECOND PARAGRAPH OF § 545.</u>

The third paragraph of § 545 states that proof of possession *"shall be deemed evidence sufficient to authorize conviction for violation of this section."* Unlike the fourth paragraph which specifically states that the forfeiture provision applies to *"any person described in the in the first or second paragraph."* Moreover, the presumption that possession equates to culpability is grammatically and contextually incongruent with text of paragraph one requiring that the defendant act *"knowingly and willfully, with intent to defraud the United States."*

In Matalon, the defendant challenged the constitutionality of the statutory presumption in 18 U.S.C. § 545. United States v. Matalon, 425 F.2d 70 (2d Cir.1970). The Court held the jury instruction and statutory presumption in were not unconstitutional, stating *"a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience."* Id. at 71, Citing Tot v. United States, 319 U.S. 463, 467-468, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943). See also, United States v. Bentley, 875 F.2d 1114, 1118 (5th Cir. 1989) (*"an inference of guilt as to all elements of the offenses charged beyond a reasonable doubt, independently of the statutory presumption allowing conviction for smuggling upon proof of mere possession"*). However, *"where the inference is so strained as not to have a reasonable relation to the circumstances*

---

U.S. 213, 221, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961); United States v. Murdock, 290 U.S. 389, 394-98, 54 S.Ct. 223, 78 L.Ed. 381 (1933).

*of life as we know them it is not competent for the legislature to create it as a rule governing the procedure of courts."* Id.

The Supreme Court ruled in Turner, in criminal cases statutes permitting the inference of one fact from the proof of another, must be subjected to scrutiny by the courts to prevent *"conviction upon insufficient proof."* Turner v United States, 396 US 398, 405; 90 S Ct 642, 649 (1970), citing Leary v. United States, 395 U. S. 6, 37 (1969). Referring to the statute in this case, the Supreme Court explicitly reiterated the mens rea requirement stating:

> "For the Government to secure a conviction under § 545, it must prove the physical act of unlawful importation as well as a knowing and willful intent to defraud the United States. An acquittal on the criminal charge may have involved a finding that the physical act was not done with the requisite intent." One Lot Emerald Cut Stones and One Ring v. United States, 409 U.S. 232, 234, 93 S.Ct. 489, 491, 34 L.Ed.2d 438, 440 (1972) (emphasis added).

Thus, here, the government must prove that Mr. McPherron failed to fill out a USFWS Form 3-177 when exiting/entering the United States *"knowingly and willfully, with intent to defraud."* However, Mr. McPherron lacked the requisite mental state to be found guilty under the statute. He took his own feathers, which he had acquired long ago (in the United States), and travelled with them outside the country. He then returned to the United States with those same feathers. Mr. McPherron travelled with the feathers as part of his religious healing activities. Mr. McPherron is a Shaman for the Native American Church, and uses the feathers as part of customary and religious ceremonies. He was merely practicing his protected religious activities, and had no intent to defraud the United States.

Mr. McPherron was not charged with violating the Bald and Golden Eagle Protection Act, 16 U.S.C. § 668. He was charged with smuggling prohibited items under the first paragraph of 18 U.S.C. § 545. As discussed, he did not possess the necessary mens rea warranting a conviction under that statute and the government has not provided any evidence to show otherwise.

### IV.     CONCLUSION:

Because Mr. McPherron did not knowing and willfully travel with the feathers with intent to defraud the United States, his conviction under 18 U.S.C. §545 would be improper. The Government has not introduced any evidence that the Defendant acted with the specific intent and bad faith required under the law. Therefore, we respectfully requests that the court find Mr. McPherron not guilty.

RESPECTFULLY SUBMITTED this 12th day of February, 2020.

By:   /s/Thomas E Higgins
Thomas Higgins, Esq.
Attorney for Dennis Raymond McPherron

The above signed does hereby certify that on the above date he electronically transmitted this document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Original filed via CM/ECF this date to:

U.S. District Court Judge

Michael Jette
Assistant United States Attorney