**Thomas E. Higgins**
LAW OFFICES OF THOMAS E. HIGGINS
325 West Franklin Street
Tucson, Arizona 85701
(520) 624-8663
State Bar No: 04324

Attorney for Dennis Raymond McPherron

# IN THE UNITED STATES DISTRICT COURT
# IN THE DISTRICT OF ARIZONA

| | |
|---|---|
| **THE UNITED STATES OF AMERICA,**<br>    Plaintiff,<br>vs.<br>**DENNIS RAYMOND MCPHERRON,**<br>    Defendant. | Case No: CR17-00242-JAS-(EJM)<br><br>**DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW.**<br><br>HON. JAMES A. SOTO |

   COMES NOW, the Defendant, Dennis McPherron, by and through undersigned counsel, submits the forgoing *Proposed Finding of Facts and Conclusions of Law,* as order by the Court.

   RESPECTFULLY SUBMITTED, this February 19, 2020.

                    */S/ Thomas E. Higgins*
                    THOMAS E. HIGGINS
                    Attorney for Dennis R. McPherron

## I.   PROPOSED FINDING OF FACTS:

1. On February 17, 2016, Dennis McPherron, entered the United States from Mexico using the Mariposa Port of Entry in Nogales, Arizona. He had in his possession 45 different bird feathers, belonging to a variety of different species of birds. Among them two (2) Golden Eagle.

2. Mr. McPherron acquired these feathers decades earlier, in the United States, and travelled with them him on his trip to Mexico.

3. Prior to his departure, Mr. McPherron failed to complete a USFWS Form 3-177 — "Declaration for the Importation or Exportation of Fish or Wildlife," to notify Customs authorities that he was leaving the country with the feathers.

4. Upon reentry to the United States, McPherron failed to declare the feathers on the relevant Customs forms.

5. Customs agents misidentified the Golden Eagle feathers as Bald Eagle feathers.

6. The government did not produce any evidence to establish that the feathers in question were actually, Bald Eagle feathers.

7. Mr. McPherron provided evidence sufficient evidence to prove that the feathers were in fact Golden Eagle tail feathers, which he acquired decades ago, in the United States. The government did not produce any evidence to show that Mr. McPherron acquired, purchased, or obtained the feathers in Mexico.

8. Mr. McPherron provided evidence of his use of the feathers in religious ceremonies as part of the Native American Church.

9. Mr. McPherron was not charged with smuggling Golden Eagle feathers, and the government failed to produce any evidence to support the charge in the indictment.

10. Mr. McPherron did not have in his possession Bald Eagle feathers.

## II. CONCLUSIONS OF LAW:

**THE CHARGED ACT:**

1. **The indictment:** Mr. McPherron is not charged with possessing Golden Eagle feathers.

2. **Relevant Portion of the Statute:** The Indictment charges Mr. McPherron of violating the first paragraph of 18 U.S.C. § 545, with *willfully*, *knowingly* and *fraudulently* importing into the United States Bald Eagle feathers, prohibited under the *Bald and Golden Eagle Protection Act,* 16 U.S.C. § 668.

3. **The Language of the Indictment:** The language of the indictment mirrors that of the first paragraph of 18 U.S.C. § 545, which states, "Whoever <u>knowingly</u> and <u>willfully</u>, <u>with intent to defraud</u>…"

**SPECIFIC INTENT REQUIREMENT:**

4. **Statutory Language:** The text of the statute denotes that first paragraph of § 545 describes a *Specific Intent crime.* The Supreme Court has *"long recognized that determining the mental state required for commission of a federal crime requires construction of the statute and … inference of the intent of Congress."* <u>United States v. Christy</u>, 916 F.3d 814, 845 (10th Cir. 2019); citing, <u>Staples v. United States</u>, 511 U.S. 600, 605, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (quotations omitted). The natural language of the statute implicates a mens rea requirement. [1]

5. **Legislative History:** The legislative history reveals that the statute requires two different mental states, depending on which paragraph the defendant is charged with violating. See <u>United States v. Menon</u>, 24 F.3d 550, 556 (3d Cir.1994) *"the meaning of 'defraud' must be interpreted in the context of the particular statute that uses the term…".* ) The Third Circuit identified as "countervailing evidence" the legislative history of the 1948 revision of the United States Code, specifically, the House Report, which explains that Congress did not intend any substantive changes unless explicitly discussed in the Reviser's Notes. Id. at 556-57. Because the Reviser's Note to § 545 states only that *"[c]hanges were made in*

---

[1] See generally, <u>United States v. X-Citement Video</u>, Inc., 513 U.S. 64 (1994). The Court's decision hinged on the "the critical determination" of whether the term "knowingly," in the phrases *"knowingly transports or ships"* and *"knowingly receives, or distributes"* modifies not only those verbs but also the phrase "the use of a minor." <u>Id</u>. at 69-70 The Court held that *"[t]he most natural grammatical reading . . . suggests that the term `knowingly' modifies only the surrounding verbs: transports, ships, receives, distributes, or reproduces."* <u>Id</u>. at 81. The Court Stated, *"the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct."* <u>Id</u>. at 72.

*phraseology"* and fails to discuss the impact of deleting the words *"the revenues of,"* the *Menon* court held that Congress did not intend to work a substantive change in the statute by interpreting *"to defraud the United States"* more broadly. Id.

6. **Specific Intent:** Violation of the first section of 18 U.S.C. § 545 is a *Specific Intent crime.* The government must prove that 1) defendant committed *"actus reus"* and 2) that he performed the act with the requisite *"mens rea."*
    a. The government did not prove that Mr. McPherron possess the requisite *mens rea* under 18 U.S.C. § 545. For an offense charged under paragraph one of section 545, specific intent must be proven by the government. United States v. Smith, 714 Fed. Appx. 701 (9th Cir. 2017) (*"'Fraudulently' importing unlawful merchandise – doing so with the intent to defraud – requires specific intent [.]"*)
    b. *"For the Government to secure a conviction under § 545, it must prove the physical act of unlawful importation as well as a knowing and willful intent to defraud the United States. An acquittal on the criminal charge may have involved a finding that the physical act was not done with the requisite intent."* One Lot Emerald Cut Stones and One Ring v. United States, 409 U.S. 232, 234, 93 S.Ct. 489, 491, 34 L.Ed.2d 438, 440 (1972) (emphasis added).

7. **Knowledge:** The Government did not provided any evidence to show that Mr. McPherron, knew that what he was doing was illegal, which is required for a specific intent crime. See for example United States v. Lizarraga-Lizarraga, 541 F.2d 826 (9th Cir. 1976). (There, defendant was charged with *"willfully and unlawfully attempt[ing] to export and take out of the United States ... and into the Republic of Mexico ammunition"* in violation of 22 U.S.C. § 1934.The Court held inclusion of the term "willfully," made it clear that Congress intended to punish only those who exported ammunition knowing it was unlawful to do so. See Id. at 828.) See also, Etheridge v. United States, 380 F.2d 804 (5th Cir.1967). (the court affirmed defendants' convictions, because there was sufficient evidence to support the jury's finding that *"each of the defendants knew it was unlawful to export from the United States to Haiti the aircraft ...."* Id. at 807.
    a. Knowledge is a precondition to forming intent to defraud. See United States v. Garcia-Paz, 282 F.3d 1212, 1217 (9th Cir. 2002) (Government must prove that the Defendant

knew he that he *"importing or bringing in merchandise contrary to law."* The defendant's mistake as the type of illegal merchandise was irrelevant. Id.)

8. **Scienter:** Without proof of scienter, the Defendant cannot be convicted of violating the first paragraph of § 545. When a statute requires *"willful" action*, the Courts have held that, mere negligence or even gross negligence, do not satisfy the mens rea requirement. United States v. Colacurcio, 514 F.2d 1, 8 (9th Cir.1975); United States v. Klee, 494 F.2d 394, 395 and n. 1 (9th Cir.), cert. denied, 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 61 (1974). Rather, the government must show the defendant's act was *"voluntary and purposeful, and if committed with the specific intent…"* United States v. Swanson, 509 F.2d 1205, 1210 (8th Cir.1975).

**ACTUS REA UNDER § 545**

9. **Actus Rea:** The government did not prove the actus rea under § 545. The first paragraph of § 545, the statute also requires that the government prove that the defendant *"smuggles, or clandestinely introduces or attempts to smuggle or clandestinely introduce into the United States any merchandise which should have been invoiced."* A plethora of case law stretching back to the 19th Century has outlined the elements and definition of "smuggling."

10. **Smuggling:** A person is guilty of smuggling under 18 U.S.C. § 545 when he or she employs any method of introducing goods into this country surreptitiously with the intent to avoid and defeat United States customs laws. United States v. Mehrmanesh, 689 F.2d 822, 833 (9th Cir. 1982), citing United States v. Kurfess, 426 F.2d 1017, 1019 (7th Cir.), cert. denied, 400 U.S. 830, 91 S.Ct. 60, 27 L.Ed.2d 60 (1970); United States v. Boggus, 411 F.2d 110, 113 (9th Cir.), cert. denied, 396 U.S. 919, 90 S.Ct. 245, 24 L.Ed.2d 198 (1969); United States v. Claybourn, 180 F.Supp. 448, 451 (S.D.Cal.1960). The offense of smuggling is complete when an article is *". . . carried across the boundary in such a way as to avoid a port of entry. . . ."* Tomplain v. United States, 42 F.2d 205 (5th Cir. 1930), citing United States v. Ritterman, 273 U.S. 261, 47 S.Ct. 371, 71 L.Ed. 636 (1926). Because Mr. McPherron possessed the feathers before leaving the United States, and merely took them on his trip to Mexico, he cannot be said to have smuggled them into the

United States. As stated, "smuggling" involves *'importation"* contrary to law. Register, 496 F.2d at 1083.

**SECOND PARAGRAPH OF § 545**

11. **Second Paragraph of § 545:** Unlike the first paragraph, when the government charges a defendant under the second paragraph two of § 545, it is required to prove as an element of an offense that the defendant *"specifically intended to defraud the Government."* Davis, 597 F.2d at 1239. (*"By its own clear terms, § 545 [second paragraph] does not require proof of both a knowing and fraudulent element."* Id.)

12. **"Importing" requires transport of foreign goods/merchandise into the United States:** As for the term "import," absent a statutory definition the common connotation of foreign-country origin might prevail. United States v. Ramirez-Ferrer, 82 F.3d 1131, 1146 (1st Cir.1996). [2] Leaving the county with American goods/merchandise and repatriating them to the United States does not qualify as importing.

   a. In the present case, Mr. McPherron returned to the United States with feathers acquired in the United States. He did not enter the United States with feathers acquired overseas. Thus, even under paragraph two of the § 545, he cannot be charged with importing as the origin of the goods is the United States. The government has not controverted the claim that proof provided by Mr. McPherron that he acquired the feathers in the United States.

**THE STATUTORY PRESUMPTION**

13. **Only applies to offenses under the first paragraph:** The third paragraph of § 545 states that proof of possession *"shall be deemed evidence sufficient to authorize conviction for violation of this section."* However, the applies only to the second paragraph of § 545. Unlike the fourth paragraph which specifically states that the forfeiture provision applies to *"any person described in the in the first or second paragraph."* The presumption that possession equates to culpability is grammatically and contextually incongruent with

---

[2] Under similar statutes, the definition of "importation" ("any bringing in") into the United States must be *"from any place outside thereof"* (21 U.S.C. § 951 and §952). United States v. Ramirez-Ferrer, 82 F.3d 1131, 1137 (1st Cir.1996). The courts are bound, Colautti v. Franklin, 439 U.S. 379, 392 n. 10, 99 S.Ct. 675, 684 n. 10, 58 L.Ed.2d 596 (1979), by Congress' special definition of "import," incorporated into section 952 by section 951(b), defining "import" in relation to destination, not origin. Id. citing United States v. Peabody, 626 F.2d 1300, 1301 (5th Cir.1980). This definition applies *"whether or not such a bringing in or introduction constitutes an importation within the meaning of the tariff laws of the United States."* 21 U.S.C. § 951(a) (1).

text of paragraph one requiring that the defendant act *"knowingly and willfully, with intent to defraud the United States."*

14. **The Presumption is legally incongruent with the first paragraph of § 545:** The Supreme Court ruled in Turner, in criminal cases statutes permitting the inference of one fact from the proof of another, must be subjected to scrutiny by the courts to prevent *"conviction upon insufficient proof."* Turner v United States, 396 US 398, 405; 90 S Ct 642, 649 (1970), citing Leary v. United States, 395 U. S. 6, 37 (1969).[3]

**BALD AND GOLDEN EAGLE PROTECTION ACT:**

15. The indictment does not charged Mr. McPherron with violating the Bald and Golden Eagle Protection Act, 16 U.S.C. § 668. He was charged with smuggling prohibited items under the first paragraph of 18 U.S.C. § 545. As discussed, he did not possess the necessary mens rea warranting a conviction under that statute and the government has not provided any evidence to show otherwise.

16. **Not charged with illegally "taking":** *The Golden and Bald Eagle Protection Act* ("BGEPA"), prohibits the "taking" of "parts, nests, or eggs…" of the protected birds without a permit. 16 U.S.C. § 668. Under the Act, persons who *"take, possess, sell, purchase, barter, offer to sell, purchase or barter, transport, export or import, at any time or any manner, any bald eagle … [or any golden eagle], alive or dead, or any part, nest, or egg thereof"* may be subjected to criminal penalties.[4]

    a. The two (2) Golden Eagle tail feathers in question were blessed over forty (40) years ago by William Smith, the then head of the medicine people of the Cherokee Nation. The Cherokee are a federally recognized tribe by the Bureau of Indian Affairs. Federal Register / Vol. 80, No. 9 / Wednesday, January 14, 2015 / Notices. Mr. McPherron did

---

[3] See United States v. Matalon, 425 F.2d 70, 71 (2d Cir.1970). (the defendant challenged the constitutionality of the statutory presumption in 18 U.S.C. § 545. *"a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience."*, Citing Tot v. United States, 319 U.S. 463, 467-468, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943). See also, United States v. Bentley, 875 F.2d 1114, 1118 (5th Cir. 1989) (*"an inference of guilt as to all elements of the offenses charged beyond a reasonable doubt, independently of the statutory presumption allowing conviction for smuggling upon proof of mere possession"*). However, *"where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them it is not competent for the legislature to create it as a rule governing the procedure of courts."* Id.

[4] In June 2007, the bald eagles were removed from the Endangered Species List. As of 2009, the Act has made it possible for one to obtain a permit to move from operating utilities and airports. See, *U.S. Fish and Wildlife Service*, "Bald & Golden Eagle Information" https://www.fws.gov/birds/management/managed-species/bald-and-golden-eagle-information.php (accessed 2/23/2019). See also, United States v. Antoine, 318 F.3d 919, 921 (9th Cir. 2003).

not take the feathers, but rather received them as part of religious ceremonies.[5]

   **b.** The word *"take"* under the act is defined as "*… pursue, shoot, shoot at, poison, wound, kill, capture, trap, collect, molest or disturb.*" 16 USC § 668(c). Mr. McPherron did not illegally take the feathers within the meaning of the statute. Rather, he received them as part of religious ceremonies by persons who were authorized to take them.

### III.   CONCLUSION

Because Mr. McPherron did not knowing and willfully travel with the feathers with intent to defraud the United States, his conviction under 18 U.S.C. §545 would be improper. The Government did not introduced any evidence that the Defendant acted with the specific intent and bad faith required under the law. Moreover, the government failed to prove that the feathers in question were indeed Bald Eagle feathers, as charged in the indictment. Furthermore, the government failed to prove the foreign origin of the feathers, or controvert the evidence of origin introduced by Mr. McPherron. Therefore, we respectfully requests that the court find Mr. McPherron not guilty.

RESPECTFULLY SUBMITTED this 19th day of February, 2020.

/S/ Thomas E. Higgins
Thomas Higgins, Esq.
Attorney for Dennis Raymond McPherron

The above signed does hereby certify that on the above date he electronically transmitted this document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

MICHAEL P. JETTE
Assistant United States Attorney

---

[5] He received one Golden Eagle feather in the late 1980's from James Blackburn, in a 25-30 person ceremony of the Northern Arapaho, Indian, in Nevada. He received the second Golden Eagle feather by a registered Native American from the Southern Cheyenne Tribe named Wayne Turtle (deceased). The ceremony occurred approximately in 1990, in Woodfords, California. The Ceremony was confirmed by Sharon Vann, Mr. Turtle's niece, also a practicing member of the Native American Church. At the time, Mr. Turtle was a roadman, a prestigious position in the church.