MICHAEL BAILEY
United States Attorney
District of Arizona
MICHAEL P. JETTE
Assistant U.S. Attorney
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone:  520-620-7300
E-mail: michael.jette@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States America, | |
|---|---|
| Plaintiff, | |
| vs. | CR-17-00242-JAS-(EJM) |
| Dennis Raymond McPherron, | GOVERNMENT'S POST-TRIAL MEMORANDUM |
| Defendant. | |

The United States of America, by and through its undersigned attorneys, MICHAEL BAILEY, United States Attorney for the District of Arizona, and Michael Jette, Assistant United States Attorney, asks this Court to find the Defendant guilty of violating Title 18 U.S.C. Section 545 and submits the following memorandum and findings of fact in support.

**MEMORANDUM**

In order to prove intent under paragraph two of Title 18 U.S.C. Section 545[1], the government need only show that the defendant *knowingly* brought prohibited items into the United States. *United States v. Davis*, 597 F.2d 1237, 1240 (9th Cir. 1979). "*Knowingly*" refers to knowledge of the facts constituting the offense, as distinguished from knowledge

---

[1] The government has repeatedly stated that paragraph two of Title 18 U.S.C. Section 545, which requires general intent, is both the charge and theory of its case.

of the law." *Bryan v. United States*, 524 U.S. 184, 184, 118 S. Ct. 1939, 1941, 141 L. Ed. 2d 197 (1998).   An act is done knowingly "if it is done voluntarily and intentionally and not because of mistake or inadvertence or accident or other innocent reason." *United States v. Davis*, 1240. *Mistake* in this contest refers to a mistake of fact, not a mistake of law. *See United States v. Pasillas-Gaytan*, 192 F.3d 864, 868 (9th Cir. 1999); *United States v. Alghazouli*, 517 F.3d 1179, 1195 (9th Cir. 2008) (Courts routinely hold that statues which only require *knowing* conduct constitute general intent crimes which only require knowledge of the facts constituting the offense and do not require knowledge that the conduct is unlawful).

In the present case, the Court has heard Defendant's admission that he had knowledge of the facts constituting the offense charged under Section 545. Transcript of Proceedings, Evidentiary hearing, held 8/9/19, at 76-77. Defendant has testified that he knowingly entered the United States with feathers. *Id*.  These feathers, being prohibited under Section 545. Defendant's claim that he was unaware that his actions were prohibited under law is irrelevant.[2] A mistake of law is not a defense for a general intent crime. Thus, Defendant's actions constitute a violation of the general intent crime defined under paragraph two of Section 545, because he knowingly entered the United States with knowledge that he possessed feathers.

To interpret otherwise, or impose a burden on the government to show that there was *not* a mistake of law, would create an unreasonable standard. Because proving the

---

[2] In fact, the Defendant stated that he was aware of the law, but did not believe that the law applied to him. *Id.* at 80

- 2 -

absence of a mental state is nearly impossible, requiring proof that an action was *not* the result of a mistake of law would create a burden of proof higher than necessary to prove a willful intent to defraud under paragraph one of 18 U.S.C. Section 545. Such a burden could never have been the intention of the legislature as it would enable nearly every smuggler of illicit goods to evade prosecution by claiming that they did not know that smuggling drugs was illegal. For example, substitute possession of feathers for the possession of illegal drugs. Using the Defendant's own analysis, the government would be required to prove that a defendant *knew* it was against the law to smuggle illegal drugs into the United States. Such a reading of the law is in error and would be contrary to proving guilt relating to a general intent crime, which paragraph two of Section 545 is. Besides, such a mens rea requirement would be antithetical to this Court's understanding of border enforcement policy.

If a general intent showing of *knowing* is not enough, Defendant demonstrates a pattern of deceit through his highly inconsistent testimony and actions. Defendant's explanation for how he acquired the restricted feathers and the capacity in which he uses them simply cannot account for the large amount of feathers found in his truck bed, and the rough condition in which many of them were found stored.

When examining intent to defraud the United States, evidence that shows the defendant intended to avoid the customs laws, when those customs laws would prevent them from bringing a restricted item into the United States, can establish an intent to defraud, especially when the smuggled items have some value. *United States v. Boggus*,

411 F.2d 110, 113 (9th Cir. 1969) (finding that even seven dollars could help establish value used to establish intent).

Defendant claims that "a feather is a feather…Once it's been blessed and sanctified in ceremony, it becomes sacred and holy and the most revered…" Transcript of Proceedings, Evidentiary hearing, held 8/9/19, at 83. According to Defendant, once blessed, these feathers become so holy that they have the power to cure cancer and save lives. *Id*. at 75, 78. Defendant states that after spending two days of prayer, and using the eagle feathers, without a tipi ceremony, three cancerous tumors were removed from a patients kidneys. *Id*. at 75. Defendant states that he was given a caracara feather fan, and that he had saved the giver's life more than once. Defendant has several such stories where he is given a feather of great significance by a member of a Native American Tribe. *Id*. at 69, 71, 78. Defendant describes how these feathers were intricately blessed and treated, to designate them for medicinal treatment or denote their holy status. *Id*. at 69, 83. Defendant states that it was solely in his capacity as a healer that he traveled to Mexico and that he brought these sacred feathers with him as part of his healing equipment. *Id*. at 74. Defendant relies on this narrative to establish his role as a healer, a steward of scared feathers, who is frequently required to travel across national borders with these feathers in order to perform healing rituals in order to explain his possession of the feathers and justify his failure to declare them to border patrol officials.

This testimony is irreconcilable with the fact that border patrol investigators found over 200 feathers[3] in Defendant's truck bed, many of which were loosely stuffed into garbage bags[4] and FedEx boxes[5], some even covered in feces as the Defendant stated in trial. Investigators found many of these "most revered" items loosely stuffed in containers meant for trash, buried underneath junk, in the most inaccessible part of the truck bed. *Id*. at 53-54. The treatment of these feathers based on the condition they were discovered in by investigators is incompatible with Defendant's explanation of them.

The only explanation is that these loose, feces covered feathers, found stuffed in trash bags, are just "*feathers*" as described Defendant[6], and that they are distinct from the *sacred feathers*, gifted to him for healing purposes, ornately fashioned into fans and stored in a special wooden box in the truck. However, such a fact would be incompatible with Defendant's statement that he traveled to Mexico specifically to perform healing rituals. If the loose, soiled feathers were not sacred feathers, it would not make sense for Defendant to bring them on a healing mission. Furthermore, the sheer volume of feathers (211 feathers total) conflicts with Defendant's testimony about how the feathers are used and the potency of the sacred feather's healing power.[7]

---

[3] *Id*. at 21.

[4] *Id*. at 24.

[5] *Id*. at 90.

[6] *Id*. at 83.

[7] Defendant stated that utilizing the eagle feathers, he was able to remove three cancerous tumors from a patient's kidneys. *Id.* at *75*.

- 5 -

Additionally, Defendant's explanation that on a handful of occasions he was gifted single feathers[8] or a previously crafted fan[9] cannot explain how he was able to acquire over 200 feathers, let alone 211 feathers found in his truck bed during a single search. This large volume of restricted feathers is especially alarming given how challenging it is for legitimately recognized Native American Tribes to requisition protected feathers from the government, with there often being a waiting period in excess of one year. *Id.* at 33-34.

Defendant has repeatedly demonstrated deceptive intent, from his initial failure to disclose the feathers after passing numerous border signs which gave him proper notice that he was trafficking prohibited items, to his continued refusal to disclose his possession of the feathers during initial interactions with border patrol agents, to irreconcilable testimony and conflicting statements made at the evidentiary hearing. These actions prove that Defendant intended to avoid and defeat the United States' customs laws.

## FINDINGS OF FACT

In addition to the facts outlined in the government's analysis of Title 18 U.S.C. Section 545, the government submits the following facts.

**February 17, 2016**

1. The Defendant presented himself for entry into the United States through the vehicle entry lane at the Mariposa Port of Entry (POE);

2. On his approach to the POE, U.S. Customs and Border Protection advisory sign

---

[8] *Id.* at 69, 71.

[9] *Id.* at 78.

advised all travelers that they are required to declare certain items which includes animal products;

3. U.S. Customs and Border Protection Agricultural Specialists (CBPAS) Vasile and Bridge, CBP Supervisory Agent Wlazlak, and U.S. Fish and Wildlife Services (USFWS) Special Agent Kurey stated that bird feathers are animal products;

4. At the POE, the Defendant was asked by a CBP officer if he had anything to declare, which included animal products;

5. The Defendant gave a negative declaration to animal products;

6. The Defendant, however, did admit to possessing peyote;

7. The Defendant was asked to proceed to secondary for an agricultural inspection;

8. Before the agricultural inspection began, CBPAS Vasile asked the Defendant again if he had any items to declare, including animal products;

9. Again, the Defendant did not declare any animal products;

10. After the Defendant's second negative declaration, CBPAS Bridge conducted an inspection of his truck;

11. CBPAS Bridge found approximately 211 feathers in trash bags and a FedEx box hidden underneath other items;

12. The trash bags and FedEx box of feathers were located in the section of the truck bed near the cabin, i.e. the section of the truck opposite the tailgate;

13. CBPAS Bridge stated that in her experience the feathers were purposefully concealed from inspection;

14. The Defendant admitted all the feathers were his;

15. The Defendant admitted that he was asked to declare animal products two times upon his entry into the United States, and that he purposefully did not declare the feathers hidden in trash bags and a FedEx box;

16. The Defendant admitted to traveling to Mexico and then back to the United States at least one to two times per year for the past 25 years;

17. The Defendant admitted he was asked the same declaration question multiple times over the past 25 years, which included whether or not he had any animal products;

18. The Defendant stated the feathers in his possession included Golden Eagle, Bald Eagle, Macaw, and feathers from other bird species;

19. The Defendant admitted that the Macaw feathers were from Mexico;

20. The Defendant described all these feathers as "sacred" and "holy";

21. USFWS Special Agent Kurey, based on her extensive training and experience, identified that the Defendant had Golden Eagle and Bald Eagle feathers, Macaw feathers, Roadrunner feathers, and feathers of other bird species;

22. The Defendant is not a Native American;

23. The Defendant is not a member of any federally recognized Native American Tribe;

24. The Defendant is prohibited from possessing the Golden Eagle, Bald Eagle, and other feathers pursuant to federal law;

25. CBP Supervisory Agent Wlazlak stated that all CBP officers are trained to ask every person entering the United States to declare, among other items, animal products, which include bird feathers; and

26. CBPS Supervisory Agent Wlazlak stated that there exists *no* exception that allows

anyone returning to the United States from declaring any required item if they had left the United States with those items first.

**<u>Feathers</u>**

There was more than sufficient evidence that the Defendant possessed and brought into the United States both Golden and Bald Eagle feathers, including expert testimony from USFWS Special Agent Kurey and the Defendant's own admissions.

First, the Defendant himself during the Evidentiary Hearing (EH) admitted to possessing Golden and Bald Eagle feathers. At the EH, when the Defendant was being questioned on direct by his attorney, he stated that among the feathers in his possession on the day charged were Golden and Bald Eagle feathers. In fact, his attorney drew reference to this specific feathers stating that he would focus the rest of his questions on the Golden and Bald Eagle feathers. Transcript of Proceedings, Evidentiary hearing, held 8/9/19, at 67, 11-14. From then on, the Defendant makes continual reference to both the Golden and Bald Eagle feathers. *Id*., at 69, 72, 73, 75, 76, 77, 78, 80, 83, and 93.

Second, the Defendant, during cross-examination at his bench trial, was asked multiple times about both the Golden and Bald Eagle feathers in his possession. In fact, during cross-examination, the Defendant had no objection to the feather lab report findings stating that some of the feathers in his possession were in fact Golden and Bald Eagle feathers. And during these questions, the government presented the Defendant with photographs of the Golden and Bald Eagle feathers, and it is the government's recollection that he self-identified both Golden and Bald Eagle feathers even reemphasizing to the Court both the heritage and "medicinal" power of these feathers.

Third, the Defendant's own admissions isn't the only evidence this Court can consider. USFWS Special Agent Kurey stated, based on her extensive training and experience, Golden and Bald Eagle feathers were included in the some 200 feathers the Defendant was attempting to smuggle into the United States. In fact, USFWS Special Agent Kurey was able to explain to the Court the difference between Golden and Bald Eagle feathers based on color and other physical characteristics of the feathers through the photographs admitted (the government had even brought the actual feathers to court for demonstrative review, but the Court found the photos sufficient evidence). Photographs of both the Golden and Bald Eagle feathers were admitted into evidence and were classified as either Golden or Bald Eagle feathers. USFWS Special Agent Kurey's extensive training and experience, which includes her ability identify and classify different kinds of bird feathers, including Golden and Bald Eagle feathers is powerful evidence.

In conclusion, the government has easily met its burden in proving beyond a reasonable doubt that the Defendant possessed both Golden and Bald Eagle feathers.

**Indictment**

The government charged the Defendant with bringing in certain merchandise contrary to law. The government then provides the Defendant with an example of the merchandise he brought in contrary to law, which was "various bald eagle feathers." Listing out one set of feathers (i.e. Bald Eagle feathers) does not preclude the government from arguing other merchandise (i.e. other feathers) was brought into the United States contrary to law by the Defendant.

## **CONCLUSION**

The government proved beyond a reasonable doubt that the Defendant possessed Golden Eagle, Bald Eagle, Macaw, and other feathers in his vehicle, and attempted to enter the United States with those feathers without declaring possession. In fact, the Defendant attempted to hide the feathers—feathers he declared "sacred" and "holy"—in garbage bags and a FedEx box buried underneath other items in the bed of his truck. The Defendant admitted that he was neither a Native American nor member of any federally recognized Native American Tribe. USFWS Special Agent Kurey identified the feathers, and the Defendant himself admitted to the specific kinds of feathers in his possession.

Last, 18 U.S.C. §545 paragraph two is a general intent crime, and the government has proven beyond a reasonable doubt that the Defendant knew of his actions underlying the smuggling of feathers into the United States.[10]

---

[10] Even if this Court believes that paragraph one of §545 applies, the government has proven that the Defendant knew that a failure to declare animal products was contrary to law. The Defendant upon entering in the United States was informed by a USCBP advisory sign about what items he was required to declare; was asked two times on February 17, 2016 for his declaration and failure to do so would be in violation of U.S. law; and the Defendant over the past 25 years of returning to the United States from Mexico was asked to declare multiple times.

As such, the government respectfully asks this Court to find the Defendant guilty.

Respectfully submitted this 20th day of February, 2020.

                          MICHAEL BAILEY
                          United States Attorney
                          District of Arizona

                          *s/Michael P. Jette*

                          MICHAEL P. JETTE
                          Assistant U.S. Attorney

Copy of the foregoing served electronically or by other means this 20th day of February, 2020, to:

Thomas Higgins, Esq.